# EXHIBIT B

{00628769.DOCX / }

Fulton County Superior Court
\*\*\*EFILED\*\*\*LS
Date: 12/11/2015 10:25:37 AM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| WILLIAM JENKINS, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION FILE NO. |
| ) | |
| ) | 2015-CV-268640 |
| v. ) | |
| ) | |
| SAMSON TOURS INC. D/B/A ) | |
| SAMSON RAILWAYS AND ) | |
| PROSOURCE INC, ) | |
| ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |

## FIRST AMENDED COMPLAINT

COMES NOW, William Jenkins ("Mr. Jenkins" or "Plaintiff"), and hereby files this First Amended Complaint against Samson Tours Inc. d/b/a Samson Trailways and Pro Source Inc. (collectively "Defendants "),[1] showing the Honorable Court as follows:

## INTRODUCTION

This is an action for unpaid overtime compensation pursuant to the Fair Labor Standards Act of 1938 (the "FLSA"), 29 U.S.C. §201 *et seq.*

## PARTIES

1.

Mr. Jenkins is a resident of the State of Georgia. Mr. Jenkins submits himself to the jurisdiction of this Court.

---

[1] Plaintiff filed his original Complaint against "Samson Trailways." On December 9, 2015, Samson Trailways filed its Answer clarifying its name as "Samson Tours, Inc." d/b/a Samson Trailways. Thus, in addition to adding Pro Source, Inc. as a Defendant to this action, Plaintiff has filed this First Amended Complaint with the correct name of Defendant Samson Tours, Inc.

2.

Samson Tours d/b/a Samson Trailways ("Samson) is a corporation doing business within the State of Georgia and is subject to suits of this kind and nature. Samson's principal place of business is located at 3745 Zip Industrial Blvd. S.E., Atlanta, Georgia 30354. Samson may be served with process pursuant to O.C.G.A. § 9-11-4 including, but not limited to, by delivering a copy of the Complaint and Summons to its owner Whilhelm "Bill" Sambdman, Jr. at its principal place of business.

3.

Pro Source, Inc. ("Pro Source") is a corporation doing business within the State of Georgia and is subject to suits of this kind and nature. Pro Source's principal place of business is located at 1835 Savoy Drive, Suite 105, Atlanta, Georgia 30341. Pro Source may be served with process pursuant to O.C.G.A. § 9-11-4 including, but not limited to, by delivering a copy of the Complaint and Summons to an officer at its principal place of business. Pro Source may also be served with process by delivering a copy of the Complaint and Summons to its registered agent for service, CT Corporation System at 1201 Peachtree Street, N.E., Atlanta, Georgia 30361.

4.

Defendants jointly employed Mr. Jenkins. Among other things, Defendants collectively (a) had the power to hire and fire Mr. Jenkins; (b) supervised and controlled Mr. Jenkins' work schedule and the terms and conditions of his employment; (c) determined the rate and method of payment; and (d) maintained Mr. Jenkins' employment records. In addition, Defendants both benefited financially from the services Mr. Jenkins provided as an employee of both Defendants.

## VENUE AND JURISDICION

5.

Venue is appropriate in this Court pursuant to O.C.G.A §14-2-510 and other applicable law. Samson is located in Fulton County and Pro Source's registered agent for service is in Fulton County. Moreover, the unlawful employment practices occurred in Fulton County.

6.

Defendants regularly conduct business within this State and County.

7.

This Court has jurisdiction over Defendants.

8.

At all times relevant to this suit, Mr. Jenkins was an employee of Defendants within the meanings of the FLSA.

9.

At all times relevant to this suit, Defendants were employers within the meaning of the FLSA. Defendants are employers of employees "engaged in commerce," employed in an enterprise engaged in commerce," and/or in "the production of goods for commerce" as defined by 29 U.S.C. §203. At all times material to this action, Defendants have had an annual gross volume of sales which exceeded $500,000.

## UNDERLYING FACTS

10.

Defendants jointly hired Mr. Jenkins in November 2014. Mr. Jenkins served as a dispatcher for Samson. Mr. Jenkins remained employed by Defendants until his discharge in July 2015.

11.

Defendants hired Mr. Jenkins to work 40 hours per week. However, Mr. Jenkins routinely worked many hours in excess of 70 hours per week. At times, Mr. Jenkins worked more than 80 hours a week.

12.

Indeed, Defendants required Mr. Jenkins to be on-call for 24 hours. While on-call, Mr. Jenkins received and accepted calls on a regular basis well after his normal work hours and well into the night and morning hours.

13.

Defendants did not, however, pay Mr. Jenkins overtime for hours worked over 40 at 1.5 times his regular rate of pay.

14.

Mr. Jenkins' primary job duties involved assigning drivers to jobs based on well-established procedures, instructions, and approval by his supervisors. Mr. Jenkins also answered incoming calls and directed those calls to the appropriate person.

15.

Mr. Jenkins was required to seek and obtain approval from his supervisor before making any decisions, including those relative to which drivers to assign to a particular job. Once Mr. Jenkins was given directions as to which driver to assign to a particular job, the driver had the option of taking the assignment or declining it.

16.

Mr. Jenkins did not supervise other employees, nor did he have any management functions. Mr. Jenkins did not have the authority to hire, fire or otherwise discipline any other

employees. Mr. Jenkins did not participate in any interviews of potential employees, nor did he make recommendations to hire, fire or discipline other employees.

17.

Although Mr. Jenkins routinely received and answered calls in the middle of the night and into the early morning hours, he did not exercise independent judgment in the event of an emergency, nor did Mr. Jenkins decide how best to resolve conflicts in the event of an emergency.

18.

Mr. Jenkins' supervisor closely monitored his work and controlled the manner in which he performed his duties.

19.

Mr. Jenkins did not have the authority to independently make any significant decisions regarding Defendants' operations or business.

20.

None of Mr. Jenkins's primary job duties required him to exercise discretion and/or independent judgment; they did not involve the management of an enterprise, department, or subdivision of a department; nor did they require advanced knowledge or education.

21.

On the contrary, Mr. Jenkins simply followed instructions and established procedures for completing his job duties.

22.

Mr. Jenkins' job duties involved routine, manual and repetitive tasks performed at the direction of others. As such, Mr. Jenkins should have been paid overtime for all hours worked over 40 per workweek.

23.

Mr. Jenkins was a non-exempt employee under the FLSA improperly classified as exempt by Defendants.

24.

Defendants' failure to record all hours worked by Mr. Jenkins is a violation of the recordkeeping provision of the FLSA.

## COUNT I
## WILLFUL FAILURE TO PAY OVERTIME WAGES

25.

Mr. Jenkins incorporates by reference all preceding Paragraphs of the Complaint.

26.

Mr. Jenkins was employed by Defendants as a non-exempt employee and should have been paid for all hours worked, including all overtime worked in excess of 40 hours a week.

27.

Mr. Jenkins routinely worked in excess of 40 hours a week throughout his entire employment with Defendants.

28.

The FLSA's overtime requirements apply to Defendants. However, Defendants failed to pay Mr. Jenkins any overtime compensation at 1.5 his regular pay rate for all hours worked over 40 per workweek.

29.

Defendants knew that it misclassified Mr. Jenkins as an exempt employee, but failed to correct its error and continued paying him a fixed salary without regard to his overtime hours. Defendants' repeated failures to pay Mr. Jenkins overtime constitutes willful violations of the FLSA.

30.

Defendants have not made a good faith effort to comply with the FLSA with respect to its compensation of Mr. Jenkins.  Among other things, Defendants failed to record or otherwise maintain accurate records of all hours worked by Mr. Jenkins. Defendants also failed to pay Mr. Jenkins overtime for hours worked over 40 throughout his entire employment.

31.

As a direct and proximate result of Defendants' conduct, Mr. Jenkins is entitled to his unpaid overtime wages, liquidated damages, costs, and attorney's fees as well as the other relief set forth in the Prayer for Relief below.

## DEMAND FOR JURY TRIAL

Mr. Jenkins hereby demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Jenkins prays that this Honorable Court enter judgment against Defendants along with the following relief:

a. Declaratory judgment that Defendants have willfully violated the FLSA;

b. Judgment against Defendants for full back pay for unpaid overtime;

c. Judgment against Defendants for liquidated damages in an additional amount equal to back pay and benefits in accordance with 29 U.S.C. §216(b);

     d.    Judgment against Defendants for attorney's fees and costs of litigation;

     e.    Judgment against Defendants for prejudgment interest;

     f.    Appoint a permanent monitor to review Defendants' compliance with the requirements of the FLSA; and

     g.    Any and all such further relief that this Court or the finder of fact deems equitable and just.

Respectfully submitted this 11th day of December, 2015.

**PRIOLEAU & MILFORT, LLC**

/s/ Job J. Milfort
Job J. Milfort, Esq.
Ga. Bar No. 515915
job_@pmlawteam.com

BB&T Building -- Atlantic Station
271 17th Street, N.W., Suite 520
Atlanta, Georgia  30363
(404) 681-4886 (Phone)
(404) 920-3330 (Facsimile)

*Attorney for Plaintiff William Jenkins*